Argued and submitted June 28, affirmed October 11, Williams' reconsideration denied
December 15, 1989, Board of Parole's reconsideration denied January 19,
both petitions for review pending 1990

## FRANKIE LEE WILLIAMS,
*Petitioner,*

*v.*

## BOARD OF PAROLE,
*Respondent.*

(CA A50932)

780 P2d 793

Gary D. Babcock, Public Defender, Salem, argued the cause and filed the brief for petitioner.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

Petitioner seeks review of a final order of the Board of Parole setting his release date. ORS 144.335. He contends that, in overriding one minimum sentence and sustaining another, the Board applied new rules that took effect after his convictions, contrary to the *ex post facto* provisions of the Oregon[1] and federal[2] constitutions. We affirm.

In 1986, the trial court convicted petitioner of rape and burglary and sentenced him to 20 years in prison, with a minimum sentence of 10 years for each offense. The sentences were to run consecutively. Under the rules then in effect,[3] when a court imposed consecutive sentences, the Board had to consider the minimum sentences as a unit and sustain or override all of them; it could not override one minimum sentence and sustain another. *Hill v. Board of Parole,* 85 Or App 215, 735 P2d 1301 (1987); *Roof v. Board of Parole,* 85 Or App 188, 736 P2d 193 (1987).

The Board amended OAR 255-35-022 and OAR 255-35-023 in 1987, in response to *Hill* and *Roof.* The Board

---

[1] Or Const, Art I, section 21, provides:

"No *ex-post facto* law * * * shall ever be passed * * *."

[2] US Const, Art I, section 10, provides:

"No state shall * * * pass any * * * ex post facto Law * * *."

[3] When petitioner committed the crimes for which he was convicted, *former* OAR 255-35-022 provided, in pertinent part:

"(1) When consecutive sentences have been imposed, a rating and a range shall be assigned for each crime.

"(2) The Board shall consider the summed ranges as a single unified range. *Any minimum sentences imposed in conjunction with consecutive terms shall be considered a single unified minimum.*" (Emphasis supplied.)

*Former* OAR 255-35-023 then provided:

"(1) The Board shall not release a prisoner before a judicially imposed minimum prison term sentence has been served except when at least four members of the Board find that:

"(a) The court applied the guideline rules incorrectly; or

"(b) The Board has information not available to the court at the time of sentencing; or

"(c) The court's findings, though technically correct, lead to an inequitable result.

"(2) The Board shall state the facts and reasons for its actions and it shall then inform the sentencing court of its decisions and reasons. The Board shall then set an initial parole release date in accordance with rule 255-35-013."

deleted the second sentence of *former* OAR 255-35-022(2), which is italicized in note 3, *supra,* and added subsection (3) to OAR 255-35-023:

> "When there are consecutive minimum sentences, and the Board finds that the combined minimums are not appropriate penalties for the criminal offenses involved, and are not necessary to protect community security, the Board, by four concurring votes, may override one or more of the judicially imposed minimums and set a prison term which is less than the sum of the minimum terms."

Therefore, when a court imposes consecutive minimum sentences, the rules no longer prohibit the Board from overriding one minimum sentence and sustaining another.

The Board reconsidered petitioner's release date in 1988, because it had previously mistakenly treated the minimum sentences as concurrent, instead of consecutive.[4] It overrode one 120-month minimum sentence, finding that "the minimum term is not an appropriate penalty for the criminal offense and the minimum term is not necessary to protect the public." It concurred with the other minimum, finding "the minimum term an appropriate sanction for the criminal conduct and necessary for the protection of the public * * *."

We first consider whether the Board's rules are "laws" within the meaning of the relevant constitutional provisions. No Oregon appellate court has expressly decided whether an *ex post facto* analysis applies to administrative rules. In *Perkey v. Psychiatric Security Review Board,* 65 Or App 259, 262, 670 P2d 1061 (1983), we defined *ex post facto* legislation as that which

> "makes criminal an act not criminal when done, makes an act a greater crime than it was when it was committed, imposes a greater punishment than that in effect at the time of the offense or permits a conviction upon lesser or different evidence than was required at the time the offense was committed."

That is substantially the same definition as the Supreme Court used in *Calder v. Bull,* 3 US (3 Dall) 386, 390, 1 L Ed 648 (1798). The Oregon and federal constitutional provisions are worded similarly. United States Supreme Court cases are

---

[4] Petitioner does not assign error to that procedure.

instructive in considering the scope of the *ex post facto* prohibition in the Oregon Constitution.

■    In *Ross v. Oregon,* 227 US 150, 162-163, 33 S Ct 220, 57 L Ed 458 (1913), the Court stated that it had uniformly regarded the *ex post facto* provision of the federal constitution

> "as reaching every form in which the legislative power of a state is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, *or a regulation or order of some other instrumentality of the state exercising delegated legislative authority.*" (Emphasis supplied.)

The reasoning of *Ross* applies to Board rules, because the Board derives its rulemaking authority from statutes. *See* ORS 144.050; ORS 144.780; ORS 144.110(2)(a). Moreover, through its rules governing release dates, the Board affects the amount of freedom or punishment that a prisoner in fact receives. *See Warden v. Marrero,* 417 US 653, 663, 94 S Ct 2532, 41 L Ed 2d 383 (1974); *Harris v. Board of Parole,* 288 Or 495, 503, 605 P2d 1181 (1980). The constitution prohibits *ex post facto* laws that "[impose] a greater punishment than that in effect at the time of the offense * * *." *Perkey v. Psychiatric Security Review Board, supra,* 65 Or App at 262; *see also* ORS 144.780(2). That being so, an *ex post facto* analysis applies to Board rules that govern the setting of a parole release date, under both the Oregon and federal constitutions.

■    The next question is whether the 1987 rules impose a greater punishment than did the former rules. Previously, the Board could only sustain or override all of the minimum sentences. The maximum punishment, sustaining all of the judicial minimum sentences, remains the same. The key difference is that the new rules provide the Board with *more* flexibility to impose a *lesser* punishment than was imposed by the trial court. It may now override one minimum while sustaining another. The Board is not required, nor does it have the authority, to impose any greater punishment than before. The amendment to the rules had an ameliorative effect on petitioner's possible punishment, rather than being more onerous. Application of the new rules to petitioner did not violate the Oregon Constitution. *See State v. Smith,* 56 Or 21, 26, 107 P 980 (1910); *Perkey v. Psychiatric Security Review Board, supra.*

Petitioner's argument assumes that, under the old rules, the Board would have overridden both of his minimum sentences, rather than neither of them. However, the appropriate *ex post facto* analysis only compares the *possible* punishments under the old and new schemes. It is not appropriate to speculate about how the Board's decision might have differed under the old rules, if the new rules themselves are not more onerous. *See Dobbert v. Florida,* 432 US 282, 294, 97 S Ct 2290, 53 L Ed 2d 344 (1977).

■ The prohibition against *ex post facto* laws in the United States Constitution does not provide petitioner with any greater protection. In *Miller v. Florida,* 482 US 423, 430, 107 S Ct 2446, 96 L Ed 2d 351 (1987), the Court stated that under its

> "test for determining whether a criminal law is ex post facto * * *, two critical elements must be present: first, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.' " (Citation omitted.)

Further, even if a procedural change in the law works to the disadvantage of an offender, it is not *ex post facto* if it "does 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.' " *Miller v. Florida, supra,* 482 US at 433, (quoting *Hopt v. Utah,* 110 US 574, 590, 4 S Ct 202, 28 L Ed 262 (1884)).

The new rules do not fail the *Miller* test. The Board applied the amended rules retrospectively to petitioner. However, the amended rules do not disadvantage him, because they are not more onerous than the old rules and do not substantially change the procedure for considering the length of his sentence.[5]

Affirmed.

---

[5] Petitioner's other arguments lack merit and require no discussion.